IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tonya Robinson, :
        Plaintiff : Civil Action 2:11-cv-01084

v. : Judge Graham

Michael J. Astrue, : Magistrate Judge Abel
Commissioner of Social Security,
        Defendant :

## REPORT AND RECOMMENDATION

Plaintiff Tonya Robinson brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff maintains that she meets the Listing 3.03B based on her longstanding history of asthma and the number of hospitalizations and emergency room visits she has had.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- Plaintiff meets the requirements of Listing 3.03B; and,
- The administrative law judge's residual functional capacity determination that plaintiff can walk and stand for six hours is not supported by substantial evidence.

**Procedural History.** Plaintiff Tonya Robinson filed her application for disability insurance benefits on November 8, 2008, alleging that she became disabled on June 30, 2006, at age 45, by asthma. (R. 133, 161.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On November 29, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 27.) A vocational expert also testified. On January 28, 2011, the administrative law judge issued a decision finding that Robinson was not disabled within the meaning of the Act. (R. 21.) On October 13, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Tonya Robinson was born June 12, 1961. (R. 133.) She completed the 11th grade. In 2001, Robinson completed management school and a nurse's aid course. (R. 166.) She has worked in a restaurant as a cashier, a shift supervisor, an assistant manager, and a line cook. She last worked March 2008. (R. 199.)

**Plaintiff's Testimony.** Plaintiff testified that as a shift manager at a restaurant she oversaw 12 to 15 people. In this position, she lifted forty to fifty pounds. The environment could be hot and there was a lot of grease. She also went in and out of the cooler. She worked at a fast pace.

2

She had her first asthma attach at age 13. Her asthma became significantly worse in 2006. She had tried several different inhalers. She had also been prescribed Advair, a nebulizer, and oxygen. She had been admitted to the hospital a number of times. She went to the hospital when everything tightened up and she could not breathe. Her blood pressure would go up. She frequently had a cold turn into pneumonia.

In the past year, she had not had to go to the hospital. Taking her medications regularly had kept her asthma under control, although she still had breathing problems. She became out of breath easily. She would sit down, catch her breath, clean, sweep the floor, or mop while sitting down. She tried to limit herself to activities that she could perform while sitting down because she was always out of breath. She was depressed because she could not do the things that she would like to. She testified that she wanted to work, but she could not finding a job that did not bother her asthma.

She could only work around the house for ten to thirty minutes before having to rest or use oxygen or an inhaler. She needed to rest for about two to three hours at a time. She used her oxygen about four hours per day. Her use depended on the weather. If it was really hot, she used it continuously. She used a nebulizer four times a day in addition to an inhaler. Her doctor told her that she was using her inhaler too frequently because she was experiencing nausea.

Plaintiff testified that she could stand for about 45 minutes to an hour. She had to lean on something when she was standing. She could walk about four blocks, although she might have to stop to use her inhaler. She believed that she could walk for about 15

minutes without needing to stop. At times she became short of breath while she was sitting. She used oxygen at night because of shortness of breath in her sleep. She had to sleep on five to six pillows.

In the past six months, plaintiff had lost approximately 50 pounds. Plaintiff reported that she had had difficulty swallowing. At times, she became nauseated when she ate. She also reported having back pain. She was prescribed Percocet, but she did not take it. She had not tried physical therapy. Her doctor said that she might have arthritis or a dislocated disc. Robinson did not have medical insurance, so she was unable to undergo any tests.

She did not have a portable oxygen unit because she did not have medical insurance. She relied on her inhaler when she was away from home. Although she had quit smoking, she began smoking again because she was so depressed and stressed out. She was attempting to quit again. She was prescribed Celexa for depression. She planned on beginning counseling.

Robinson lived with her daughter most of the time. She had lived with her mother, but she had a dog, which exacerbated her asthma. Her daughter smoked, which also caused her problems. (R. 33-49.)

**Medical Evidence of Record.**

**Physical Impairments.**

<u>Ohio State University Hospital</u>. On August 10, 2007, Robinson presented at the University Hospital East emergency room with complaints of difficulty breathing. She was diagnosed as having an asthma attack. (R. 554-56.)

On January 14, 2008, plaintiff presented at the emergency room with complaints of an asthma attack and wheezing. She was admitted to the hospital. She had diffuse wheezing in the apices with good air exchange, but poor exchange and vastly diminished breath sounds to the bilateral bases and in the anterior and posterior lung fields. (R. 363.)

On October 14, 2008, plaintiff presented at the emergency room with complaints of increasing shortness of breath over the past 4-5 days. Plaintiff smoked half a pack of cigarettes a week. She was admitted to the hospital and treated for chronic obstructive asthma exacerbation. (R. 302-03.) An October 16, 2008 CT pulmonary angiogram revealed diffuse bilateral ground glass opacities predominantly involving the upper lobes which were nonspecific and likely represented an infectious or inflammatory etiology with multiple areas of consolidation in the middle lobe and lingula. (R. 306.)

On March 26, 2009, plaintiff was treated at the emergency room for asthma and bronchitis. (R. 356-57.) A March 26, 2009 chest x-ray showed no acute cardiopulmonary disease. (R. 348.)

5

Riverside Methodist Hospital. On August 19, 2007, Robinson presented at the emergency room with complaints of difficulty breathing, shortness of breath, and chest tightness. (R. 250) She was diagnosed with exacerbation of asthma and pneumonia. She was admitted for observation based on diffuse wheezing. She was prescribed Advair, Moxifloxacin, Prednisone, Singular and Albuterol. Plaintiff underwent a CT scan of her pulmonary arteries. There were multiple areas of ground-glass opacities and areas of consolidation bilaterally involving the upper and lower lobes possibly the result of multifocal pneumonia, edema, or hemorrhage. (R. 257-58, 292, 505-08.)

On September 6, 2007, plaintiff returned to the emergency room with complaints of difficulty breathing, shortness of breath, and chest tightness. She was diagnosed with asthma and pneumonia. She was prescribed Singular, Prednisone, and Advair. (R. 259-260.) Plaintiff was admitted to the hospital and started on a course of IV antibiotics and steroids. (R. 475.)

On September 7, 2007, plaintiff underwent a consult for smoking cessation. (R. 256.)

On June 15, 2009, plaintiff was admitted to the hospital for an acute exacerbation of asthma. On examination, plaintiff had inspiratory and expiratory wheezing bilaterally throughout all lung fields. She was diagnosed with community acquired pneumonia. On discharge, she was prescribed oxygen and nebulizer equipment. (R. 414-16.)

John F. Condon, M.D. On February 11, 2009, Dr. Condon evaluated Robinson at the request of the Bureau of Disability Determination. Plaintiff reported complaints of asthma, back pain, and leg weakness. Plaintiff reported that she became short of breath when she was having asthmatic problems and required the use of inhalers on a daily basis. Her sleep was disrupted because of her asthma. She became somewhat short of breath going up and down stairs. She had multiple inhalant allergens including molds, dusts, and pollens that aggravated her underlying pulmonary problem. She had chronic low back pain for many years. She did not identify any specific injury. Her back pain had not limited her work activity in the past. In the past two months, she experienced a sudden onset of leg weakness making it difficult for her to get up out of a chair or to ambulate for any distance.

Plaintiff smoked 2-3 cigarettes a day. She used to smoke up to a pack and a half a day. Plaintiff was tearful throughout the examination, although she did not complain of depression. On physical examination, her chest was symmetrical with good excursion and breath sounds heard through the entire thorax. There were no rhonchi, rales, or wheezes. There was no wheezing even when she coughed.

Dr. Condon diagnosed bronchial asthma, chronic benign low back pain, leg weakness by history with undetermined etiology, and moderately severe hypertension. Dr. Condon indicated that plaintiff should only work in an atmosphere with little pulmonary irritation of any sort. Plaintiff had multiple allergens and irritants that could precipitate asthmatic problems. Her underlying pulmonary status was fairly good, with

only moderate obstructive changes that could be reversed by bronchodilators. Dr. Condon opined that plaintiff should be limited to work activities that did not require frequent lifting of weights in excess of 30 pounds, although she could lift that weight occasionally and 10-15 pounds frequently. (R. 310-13.)

Dr. Condon also completed a pulmonary function studies. (R. 314-17.)

Gary Hinzman, M.D. On February 25, 2009, Dr. Hinzman, a state agency physician reviewed the evidence of record and completed a physical residual functional capacity assessment. Dr. Hinzman opined that plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. She could stand and/or walk about 6 hours in an 8-hour day. She could sit for a total of 6 hours in an 8-hour day. Her ability to push and/or pull was unlimited. She should avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. Dr. Hinzman concluded that plaintiff was credible concerning her symptoms but not concerning her allegations of severity. Plaintiff had mild chronic obstructive pulmonary disorder with hyperexpansion and a long history of smoking. Her pulmonary function study was not in the severe range with incomplete effort. (R. 327-34.)

Riverside Health Center Community Medicine. On June 23, 2009, plaintiff was seen following an inpatient hospital stay for exacerbation of her asthma. Robinson reported doing somewhat better, but she could not walk long distances without becoming short of breath. She also experienced generalized weakness. She was able to

8

perform peak flow of 350 ml, which was an improvement from 150 ml on admission to the hospital. (R. 397-400.)

On July 6, 2009, plaintiff reported that her asthma had improved a little, although her mother's dog was making her asthma worse. She had shortness of breath. Her wheezing had decreased. Plaintiff also reported chest pain. It had several features of cardiac chest pain, but it also had some features of GERD. Plaintiff also described a sense of food getting stuck in her throat. Plaintiff was also experiencing heat intolerance, weight loss despite hyperphagia, and feeling "on edge." Plaintiff had not smoked since she was discharged from the hospital, about one month ago. (R. 378-82.)

On July 30, 2009, plaintiff reported that her asthma had not improved. She had been unable to have her prescriptions filled because of financial issues. She continued to live with her mom, who had a dog. She reported wheezing in her upper chest and throat. (R. 384-87.)

On August 11, 2009, Ms. Lisa Linhart, a physical therapist, completed a physical residual functional capacity evaluation. Plaintiff was limited to sitting for 30 minutes at a time, up to 3-4 hours per day. Plaintiff could only stand for less than 15 minutes at a time, up to 1-2 hours per day. (R. 401.)

On September 17, 2009, plaintiff reported stabbing back pain. Her asthma remained uncontrolled due to environmental factors that included her mom's dog, tobacco exposure, and weather changes. Plaintiff was also diagnosed with depression. (R. 405-08.)

Robert D. Whitehead, M.D. On December 17, 2010, Dr. Whitehead evaluated Robinson at the request of the Bureau of Disability Determination. Plaintiff reported that she had had asthma for the past 10-12 years, but it had significantly worsened over the past 4 years. Symptoms were triggered by dogs, dust, detergent, mold, perfumes, and cleaning agents. She used her metered dose inhaler 3-4 times a day. She woke during the night and used her inhaler three times a week. She had been placed on oxygen at night. She had frequent coughing and shortness of breath with exertional type activities. She could do some housework. Dr. Whitehead concluded that plaintiff could perform sedentary to light work. Her breathing environment would be the most critical aspect of her ability to maintain employment. Dr. Whitehead opined that most importantly, plaintiff should quit smoking. (R. 661-63.)

Dr. Whitehead also completed a medical source statement of ability to do work-related activities. Dr. Whitehead opined that plaintiff could occasionally lift and/or carry up to 20 pounds, although this would vary depending on Robinson's asthma and the breathing conditions. Plaintiff could sit up to eight hours in a day. She could stand without interruption for up to three hours. She could stand for a total of six hours. She Could walk for 15 minutes at a time for a total of an hour in a day. She could frequently reach and handle and continuously finger and feel. Robinson could occasionally climb stairs and ramps, stoop and crouch. She could never climb ladders or scaffolds, balance, kneel or crawl. Robinson should be exposed to unprotected heights, moving mechanical

parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold or heat, or dust, mold or pets. (R. 664-70.)

**Psychological Impairments.**

James C. Tanley, Ph.D. On December 20, 2010, Dr. Tanley, a psychologist, completed a disability assessment. Plaintiff reported that she was sad and angry because of limitations caused by her asthma. She reported appetite and sleep disturbance and mood problems. Dr. Tanley diagnosed an adjustment disorder with depressed mood, chronic. He assigned a Global Assessment of Functioning ("GAF") score of 60. (R. 676-78.) Dr. Tanley opined that Robinson was moderately impaired in her abilities to make judgments on complex work-related decisions and to respond appropriately to usual work situations and changes in a routine work setting. (R. 680-83.)

**Administrative Law Judge's Findings.**

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since June 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease with asthma; hypertension; a low back strain; and a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk 6 hours in an 8-hour workday; and can sit for 6 hours in an 8-hour workday. She should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, poor ventilation and temperature extremes. She should not perform high stress jobs and should not perform jobs with strict production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 12, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 11-20.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>Plaintiff meets the requirements of Listing 3.03B</u>. Plaintiff maintains that she had Listing level emergency visits and/or admissions from October 2006 through February 2010. Plaintiff was admitted to the hospital twice in August 2007, and each of these stays counted as two visits. Robinson was also admitted overnight in January and October 2008 and in June 2009. Plaintiff's

history of extended hospital stays count as two visits for the purposes of Listing 3.03(B). Plaintiff was also treated at the emergency room twice in March 20009. Plaintiff argues that the administrative law judge summarily concluded that plaintiff did not meet the listing without explanation. The administrative law judge also failed to evaluate whether Robinson's asthma equaled the listing beyond February 2010. Despite the lack of emergency room visits, plaintiff's asthma continued to worsen.

- <u>The administrative law judge's residual functional capacity determination that plaintiff can walk and stand for six hours is not supported by substantial evidence</u>. Plaintiff argues that the evidence of record proves that plaintiff is limited in her ability to stand and walk. The administrative law judge failed to account for plaintiff's difficulty with prolonged standing and walking. Plaintiff's testimony that she became tired after 15 to 30 minutes of activity is supported by the opinion of the consultative examiner, Dr. Whitehead. The administrative law judge also failed to account for limitations based on plaintiff's nebulizer and oxygen use. Plaintiff testified that she used the oxygen throughout the night and for approximately four hours during the day. The administrative law judge improperly dismissed Robinson's testimony as inconsistent with the medical evidence because it was prescribed only as needed and not for a specific time.

**Analysis.**

Listing 3.03B. To meet Listing 3.03B, a claimant must demonstrate:

Attacks (as defined in 3.00C),[1] in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 CFR Pt. 404, Subpt. P, App. 1. The administrative law judge concluded:

---

[1] Listing 3.00C states:
> C. Episodic respiratory disease. When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthmatic bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response. Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

20 CFR Pt. 404, Subpt. P, App. 1

> The evidence fails to document any of the medical tests necessary to satisfy the requirements of listing 3.02. The evidence fails to establish the FEV-1 levels required under listing 3.02A or the number of attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or a least six times a year as required by 3.03B.

(R. 12.)

Plaintiff maintains that the administrative law judge failed to articulate her reasoning for concluding that she did not meet the listing. Although plaintiff maintains that she met the requisite number of number of admissions, the medical evidence does not document adherence to a prescribed regimen of treatment as required by Listing 3.00C. Plaintiff did not begin to receive ongoing medical treatment for her asthma until June 2009. Although plaintiff was hospitalized numerous times in addition to visits to the emergency room, these visits occurred prior to plaintiff receiving ongoing treatment. The listing requires attacks in spite of prescribed treatment. Furthermore, plaintiff continued to smoke and live with her mother who had a dog in spite of medical advice to the contrary. Plaintiff's hospitalizations and trips to the emergency room, standing alone, are not sufficient to demonstrate that she met Listing 3.03B. As a result, the administrative law judge did not err in concluding that plaintiff failed to demonstrate that she met Listing 3.03B.

<u>Residual Functional Capacity Assessment</u>. The administrative law judge concluded that plaintiff could stand and/or walk for six hours in an eight hour workday. This conclusion is supported by substantial evidence. Dr. Condon did not

16

identify any limitations with respect to walking or standing, and the state agency physicians concluded that plaintiff could stand and/or walk for about six hours. (R. 313, 328.) Plaintiff also argues that the administrative law judge failed to account for the use of her nebulizer and oxygen throughout the day. The administrative law judge determined, however, that plaintiff's testimony concerning her use of oxygen was not credible:

> She testified that she must use oxygen for fours per day, and if it is hot outside, she must use it all day and then all night. This is inconsistent with the medical evidence: while she indeed has been prescribed oxygen, it is on an as needed basis and not for a certain amount during the day. The undersigned also notes the claimant the claimant's testimony that she uses a nebulizer four times per day and uses her inhaler as needed. However, this would not preclude the claimant from engaging in all gainful work activity.

(R. 16.) The administrative law judge properly considered plaintiff's allegations concerning her symptoms and concluded that the objective evidence did not support her allegations:

> The claimant's oxygen saturation levels and FEV1 readings provide further evidence that the claimant is able to function within the residual functional capacity outlined above. In January of 2008, the claimant presented to the emergency room complaining of shortness of breath; however her O2 saturation was 98% at that time (Exhibit 3F, p. 7). In October of 2008, her O2 saturation was slightly lower, but still recorded at 95% (Exhibit 3F, p. 4). At her consultative examination in February of 2009, John F. Condon, M.D., noted that the claimant's chest was symmetrical with good excursion and breath sounds heard throughout the entire thorax (Exhibit 4F, p. 4). He noted no rhonchi, rales or wheezes, and stated that there was no wheezing even when she coughed (Exhibit 4F, p. 4). Dr. Condon recorded FEV-1 Readings of 1.38 and 1.76 before and after bronchodilator, respectively (Exhibit 4F, p.8). He noted that this study's validity was borderline, but stated that claimant had an <u>excellent</u>

> response to bronchodilators (Exhibit 4F, p. 4). Finally, the claimant presented for another consultative examination in January of 2011 (Exhibit 23F). At that time, her FEV-1 was 2.17 without bronchodilator (Exhibit 23F, p. 5). Based on these objective findings, the claimant's chronic obstructive pulmonary disease with asthma cannot be expected to result in limitations beyond those included in the residual functional capacity outlined above (Exhibit 23F, p. 5).
>
> Other findings and observations noted during the claimant's treatment provide additional evidence that her asthma is controlled with medication. In July of 2009, Jared D. Peterson, M.D., noted that the claimant's asthma was improved, and at that time, the claimant reported that she was doing better (Exhibit 9F, p. 6). A couple weeks later, Melissa Weis, M.D., stated that the claimant's asthma was stable (Exhibit 9F, p. 11). In May of 2010, the claimant reported that her asthma was worse, but Dr. Weis stated that she did not have wheezing at that time (Exhibit 18F, p. 18). Dr. Weis noted that the claimant continued to use her inhaler for exacerbations (Exhibit 18F, pp. 18-19). In October of 2010, the claimant's breath was noted to sound clear and equal (Exhibit 17F), p. 11) The claimant presented for another consultative examination in December of 2010 (Exhibit 19). At that time, Robert D. Whitehead, M.D., noted that the claimant was breathing comfortably (Exhibit 19F, p. 2).

(R. 15.) The administrative law judge properly considered the objective evidence of record, and there is substantial evidence in the record to the support her conclusion that plaintiff's allegations concerning her need to use oxygen four hours per day were not credible.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for

18

summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel  
United States Magistrate Judge